AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Hawaii

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII *ke*
**Aug 28, 2025 3:14 PM**
Lucy H.Carrillo, Clerk of Court

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Ricky Andre Thomas, a/k/a "Pretty Ricky," and | ) Case No. |
| | )    MJ 25-1136  WRP |
| Avery Romall Brown | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ August 28, 2025 _____ in the county of _____ Honolulu _____ in the

_____ District of _____ Hawaii _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § § 841(a)(1), 846, and 841(b)(1)(A) | attempt possession of 400 grams or more of fentanyl |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Graham Bogutill, Special Agent, ATF

*Printed name and title*

Sworn to under oath before me telephonically, and attestation
acknowledged pursuant to Fed.R.Crim.P. 4.1(b)(2).

Date: _____ August 28, 2025 _____

City and state: _____ Honolulu, Hawaii _____

Wes Reber Porter
United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Graham Bogumill, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being sworn telephonically, state that the following is true and correct to the best of my knowledge and belief:

### INTRODUCTION

1.    This affidavit is submitted for the purpose of establishing probable cause that on or about August 28, 2025, within the District of Hawaii, RICKY ANDRE THOMAS, a/k/a "Pretty Ricky," and AVERY ROMALL BROWN, the defendants, attempted to possess with the intent to distribute four hundred grams or more of fentanyl, in violation of Title 21, United States Code, §§ 841(a)(1), 846, and 841(b)(1)(A).

### BACKGROUND

2.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) assigned to the Helena Field Office. I have been a Special Agent since October of 2019. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as a graduate of the Special Agent Basic Training Program at the ATF National Academy in Glynco, Georgia. As a Special Agent with ATF, my duties and responsibilities have included conducting criminal investigations for violations of federal controlled substance and firearms laws.

1

3.     The facts in this affidavit come from my personal observations, my
training and experience, and information I obtained from other law enforcement
officers and witnesses.  This affidavit is intended to show merely that there is
sufficient probable cause for the specified violation of federal law and does not set
forth all my knowledge about this matter.

## PROBABLE CAUSE

4.     In June 2025, an ATF agent working in an undercover capacity (UC)
met with an individual at Buddy's Lounge in Portland, Oregon.  During the meeting,
the UCs were introduced to THOMAS.  The UC talked to THOMAS about the sale
of cocaine in Hawaii.  THOMAS explained that the price of cocaine was higher in
Hawaii than in Oregon.  THOMAS said he would be going to Hawaii the following
Tuesday and gave UC1 his cell phone number.

5.     On July 21, 2025, the UC called THOMAS.  During a recorded
conversation, THOMAS said that he was in Hawaii and that he had been in Hawaii
for more than a month.  The UC asked THOMAS if he still wanted cocaine delivered
to him in Hawaii.  THOMAS said that he did.

6.     On July 31, 2025, the UC called THOMAS.  During a recorded
conversation, the UC told THOMAS that he could get cocaine from a Los Angeles
source of supply.  The UC said that he would charge THOMAS $13,000 to $14,000
per kilogram and that there would be a delivery fee.  THOMAS said the price of

2

cocaine in Hawaii was approximately $18,000 to $19,000 per kilogram. The UC said that he/she would travel to Hawaii to meet with THOMAS for the first cocaine transaction and establish a connection for future transactions. THOMAS said that he would let the UC know.

7.     On August 10, 2025, the UC called THOMAS. The UC told THOMAS it would cost $16,000 for a kilogram of cocaine. The UC and THOMAS then discussed coordinating a meeting for the transaction. THOMAS said that there was no rush and that he was staying on Oahu. During the same conversation, THOMAS asked whether the UC could get "fetty" (fentanyl). The UC asked if THOMAS would rather get fentanyl than cocaine, and THOMAS said that his source of supply for fentanyl had been hospitalized after a car accident, and he was looking for a new source. THOMAS suggested that he could make more money selling fentanyl than cocaine. The UC asked whether THOMAS wanted a "full thing" [a kilogram of fentanyl], and THOMAS replied, "Hell yeah, hell yeah! At least half of one…just get the number and let me know."

8.     On August 13, 2025, the UC texted THOMAS that he could get a half a kilogram of fentanyl for $11,000 and a full kilogram of fentanyl for $21,000. THOMAS told the UC to bring the full kilogram.

9.     On August 17, 2025, the UC advised THOMAS that he/she would be in Hawaii the following week and would let THOMAS know the dates.

10.    On August 27, 2025, the UC contacted THOMAS, and they agreed to meet so that THOMAS could buy the kilogram of fentanyl from the UC.  Prior to the meeting, the UC was provided with a package containing a substance that looks and feels like fentanyl (sham fentanyl).

11.    At approximately 9:00 p.m., the UC met with THOMAS at Kelly O'Neil's at 311 Lewers St., in Honolulu, Hawaii.  At approximately 10:00 p.m., BROWN arrived at Kelly O'Neil's and the UC introduced him/herself to BROWN. BROWN asked THOMAS if the UC was the person how could get fentanyl. BROWN said, "We need that fetty [fentanyl] though."  BROWN said that he had been tricked into buying fake fentanyl in the past.   The UC, BROWN, and THOMAS talked about the details of the purchase and BROWN and THOMAS said that they wanted to bring someone along who could test the fentanyl to make sure that it was real.  BROWN and THOMAS confirmed that they would pay $21,000 for the kilogram of fentanyl.  BROWN said he had the money, but that he had to go get it.  They agreed to meet at the Shoreline Hotel at 342 Seaside Ave, Honolulu, Hawaii.

12.    BROWN and THOMAS drove away in BROWN's vehicle. Investigators followed them to area of 1636 Olona Ln, Honolulu, HI 96817,

4

BROWN's registered address. Shortly thereafter, investigators saw the vehicle leave the area of 1636 Olona Ln, Honolulu, HI, and drive towards the Shoreline Hotel.

13.    At approximately 10:45 p.m., BROWN, THOMAS, and a woman arrived at the Shoreline Hotel. The woman was introduced to the UC as the "tester" of the fentanyl. The UC then asked BROWN if he could see the money. BROWN showed the UC a large amount of cash. BROWN, THOMAS, and the woman then walked into a room at the Shoreline Hotel the complete the transaction. The UC gave BROWN a kilogram of sham fentanyl.

14.    At approximately 11:00 p.m., BROWN and THOMAS were placed under arrest. During a search incident to arrest, investigators found $20,000 in cash in BROWN's pocket.

15.    BROWN was advised of his Miranda rights and agreed to talk to investigators. BROWN said that he brought the $20,000 to purchase a kilogram of fentanyl. BROWN admitted that he sells controlled substances, including marijuana and cocaine. BROWN said that his source of supply died after a vehicle accident and that THOMAS had told BROWN that he found a new source of supply. BROWN said that he and THOMAS planned to buy the fentanyl from the UC and that they brough someone along to test the fentanyl.

16.    BROWN said that he sells two ounces of marijuana a day for approximately $400 to $500 and that he sells $800 to $900 worth of cocaine daily.

5

BROWN told investigators that he had cocaine in a basket in the living room in his home. BROWN also said that he recently spent $60,000 on a Range Rover.

17.    Based on my training and experience, I know that a kilogram of fentanyl is a distributable amount of the drug and is not consistent with personal use.

18.    Based on the foregoing facts, I respectfully submit that probable cause exists to believe that RICKY ANDRE THOMAS, a/k/a "Pretty Ricky," and AVERY ROMALL BROWN, the defendants, committed the crime of attempt possession with the intent to distribute 400 grams or more of a mixture or substance containing fentanyl.

DATED:    Honolulu, Hawaii, August 28, 2025.

Respectfully submitted,

GRAHAM BOGUMILL
Special Agent, ATF

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Federal Rule of Criminal Procedure 4.1(b)(2), on this **28th** day of August 2025, at Honolulu, Hawaii.



Wes Reber Porter
United States Magistrate Judge

6